1  Gene Williams (SBN 211390)
   GWilliams@InitiativeLegal.com
2  Matthew T. Theriault (SBN 244037)
   MTheriault@InitiativeLegal.com
3  Initiative Legal Group APC
   1800 Century Park East, 2nd Floor
4  Los Angeles, California 90067
   Telephone:  (310) 556-5637
5  Facsimile:   (310) 861-9051

6  Attorneys for Plaintiff Liliya Kisliuk,
   Jesse Crick and the Settlement Class
7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

10

11  LILIYA KISLIUK and JESSE          Case No.:  CV08-03241 DSF (RZx)
    CRICK, individually, and on behalf
12  of other members of the general    CLASS ACTION
    public similarly situated,
                                       **NOTICE OF MOTION AND**
13                                     **MOTION FOR FINAL APPROVAL**
              Plaintiff,               **OF CLASS ACTION**
14                                     **SETTLEMENT; MEMORANDUM**
         vs.                           **OF POINTS AND AUTHORITIES**
15                                     **IN SUPPORT**
    ADT SECURITY SERVICES, INC.,
16  a Delaware Corporation;            Date:       December 13, 2010
                                       Time:       1:30 p.m.
17            Defendant.               Place:      Roybal, Courtroom 840

18                                     Date Action Filed:    May 15, 2008
19                                     Trial Date:            None

20

21

22

23

24

25

26

27

28

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

**TO THE COURT, PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 13, 2010, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 840 of the United States District Court, Central District of California, located at 255 E. Temple St., Los Angeles, California 90012, the Honorable Dale S. Fischer presiding, Plaintiffs Liliya Kisliuk and Jesse Crick ("Plaintiffs") will, and hereby do, move this Court for entry of an order and judgment granting final approval to this class action settlement and all agreed-upon terms therein. This Motion seeks the approval of a settlement in which Defendant ADT Security Services, Inc. ("ADT") has agreed to pay a maximum of $885,000 to resolve this class action. Specifically, Plaintiffs request that the Court grant final approval of:

- The Joint Stipulation of Class Action Settlement;[1] and
- The payment of agreed-upon administrative expenses to the claims administrator, Simpluris, Inc., in the amount of $50,000.

This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in Support of the Motion for Final Approval of Class Action Settlement; the Declaration of Marc Primo; the Declaration of Matthew Theriault; the Declaration of Michael Bui; the Declaration of Liliya Kisliuk, the Declaration of Jesse Crick; the [Proposed] Order; the [Proposed] Judgment; the records, pleadings, and papers filed in this action; and upon such other documentary and/or oral evidence as may be presented to the Court at the hearing of this Motion.

---

[1] Attached as Exhibit A to the Second Supplemental Declaration of Matthew T. Theriault (Docket No. 103).

1

Dated:  November 15, 2010                    Respectfully submitted,

2

Initiative Legal Group APC

3

By:/s/ Matthew T. Theriault

4

Gene Williams
Matthew T. Theriault

5

Attorneys for Plaintiffs Liliya Kisliuk

6

and Jesse Crick

7

8

9

10

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................ 1

II.    FACTS AND PROCEDURE........................................................ 2

    A.   Plaintiff Liliya Kisliuk Brought A Class Action Complaint
        Alleging Wage And Hour Violations.................................... 2

    B.   Class Counsel Successfully Opposed Defendant's Motion
        To Dismiss .......................................................................... 4

    C.   Class Counsel Conduct Extensive Discovery....................... 4

    D.   The Parties Settle The Claims With The Mediator's
        Assistance ........................................................................... 5

    E.   The Addition Of Jesse Crick And Re-Execution Of The
        Settlement Agreement.......................................................... 6

    F.   The Proposed Settlement Fully Resolves The Claims........... 6

        1.   Composition of the Class............................................ 6

        2.   Settlement Consideration ........................................... 7

        3.   The Release Is Limited to Claims in Complaint ........... 8

    G.   The Notice And Claims Administration Processes Were
        Completed Pursuant To The Preliminary Approval Order.... 8

III.   ARGUMENT........................................................................... 10

    A.   The Class Action Settlement Is Presumptively Fair ........... 10

        1.   All Relevant Factors Support the Presumption That the
            Settlement Is Fair.................................................... 10

        2.   Significant Investigation and Discovery Were
            Conducted............................................................. 11

        3.   The Settlement Was Reached Through Arm's-Length
            Negotiations in Which Both Parties Were Represented
            by Experienced Counsel ......................................... 11

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1

4.    The Proposed Settlement Is Reasonable Given the
Strengths of Plaintiffs' Claims and the Risk and
Expense of Continued Litigation ................................................... 12

5.    The Response of the Class Was Positive ..................................... 15

B.    The Proposed Payment To The Claims Administrator Is
Reasonable ............................................................................................. 16

C.    The Proposed PAGA Payment Is Reasonable .................................... 17

IV.   CONCLUSION............................................................................................. 17

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ................................. 16

*Brown v. Fed. Ex. Corp.*, 249 F.R.D. (C.D. Cal. 2008) ........................................ 4

*Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974) .................... 16

*Class Plaintiff's v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..................... 10

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ................................................ 16

*Elliot v. Spherion Pacific WorkForce, LLC*, 572 F. Supp. 2d 1169
  (C.D. Cal. 2008) ................................................................................................ 14

*Flinn v. FMC Corp.*, 528 F.2d at 1169 (4th Cir. 1975) ...................................... 16

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 U.S. Dist.
  LEXIS 33900 (N.D. Cal. Apr. 3, 2009) .......................................................... 17

*In Re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM, 2009 U.S.
  Dist. LEXIS 31650 (S.D. Cal. Apr. 13, 2009) ............................................... 17

*In re Nvidia Corp. Derivative Litigation*, 2009 U.S. Dist. Lexis
  24973 (N.D. Cal.) ............................................................................................ 10

*In re Pacific Enterprise Security Litigation*, 47 F.3d 373 (9th
  Cir. 1995) ......................................................................................................... 10

*Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090 (9th Cir. 1990) ................... 4

*Jasper v. C.R. England, Inc.*, No. CV 08-5266-GW(CWx), 2009 U.S.
  Dist. LEXIS 34802 (C.D. Cal. 2009) ............................................................. 14

*Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832 (9th
  Cir. 1976) ......................................................................................................... 16

*Muldrow v. H. K. Porter Co.*, 20 Fed. R. Serv. 1069 (N.D.
  Ala. 1975) ........................................................................................................ 16

*Officers for Justice v. Civil Serv. Comm'n*, 668 F.2d 615 (9th
  Cir. 1982) ......................................................................................................... 10

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009) ................ 14

2    *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th

3      Cir. 1978) ......................................................................................... 16

4    *Saylor v. Lindsley*, 456 F.2d 896 (2d Cir. 1972)......................................... 16

5    *Shaffer v. Cont'l Cas. Co.*, 362 Fed. Appx. 627 (9th Cir. 2010) ...................... 12

6    *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)........................ 10

7    *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ........................ 10

8

9    **STATE CASES**

10    *Brinker Restaurant Corp. v. Superior Court*, 165 Cal. App. 4th 25

11      (2008), *review granted* 85 Cal. Rptr. 3d 688 (2008)...................................... 13

12    *Bush v. Superior Court*, 10 Cal. App. 4th 1374 (1992) ...................................... 10

13    *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000) ............... 4

14

15    **FEDERAL STATUTES**

16    Fed. R. Civ. P. 23 ...................................................................................... 5, 10

17    Fed. R. Civ. P. 23(e).................................................................................. 1, 10

18

19    **STATE STATUTES**

20    Cal. Bus. & Profs. Code § 17200 .................................................................. 3

21    Cal. Code Regs., tit. 8, § 11040, subd. 11(A)................................................ 13

22    Cal. Lab. Code § 201................................................................................... 3

23    Cal. Lab. Code § 202................................................................................... 3

24    Cal. Lab. Code § 203................................................................................... 7

25    Cal. Lab. Code § 204................................................................................... 3

26    Cal. Lab. Code § 226................................................................................... 14

27    Cal. Lab. Code § 226.7................................................................................ 2, 13

28    Cal. Lab. Code § 226.7(b) ........................................................................... 2

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Cal. Lab. Code § 512 ................................................................ 2, 12, 13

Cal. Lab. Code § 2800 ....................................................................... 3

Cal. Lab. Code § 2802 ....................................................................... 3

Cal. Priv. Att'ys Gen. Act (PAGA) ............................................... *passim*

**SECONDARY AUTHORITIES**

Alba Conte and Herbert B. Newberg, *Newberg on Class Actions*

   § 11:41 (4th ed. 2002) ................................................................ 11

*Manual for Complex Litigation (Fourth)* § 21.61 (2004) .................................. 10

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On August 30, 2010, the Court granted preliminary approval of the Joint Stipulation of Class Action Settlement[2] ("Settlement" or "Settlement Agreement") and approved distribution of the Notice of Pendency of Class Action Settlement ("Class Notice") to the Class.  Plaintiffs Liliya Kisliuk and Jesse Crick ("Plaintiffs") now seek final approval of this Settlement Agreement.

Under this Settlement, ADT Security Services, Inc. ("ADT" or "Defendant") has agreed to pay a Class Settlement Amount of $885,000 to settle class-wide wage and hour claims.  This Settlement also will resolve claims for penalties pursuant to the Labor Code Private Attorneys General Act of 2004 (Cal. Lab. Code §§ 2698 *et seq.*, "PAGA").

Significantly, the class response to the Settlement was positive.  **Less than one percent of Class Members opted out and none has objected to the Settlement.**  The positive response reflects that the Settlement is fair, reasonable, adequate, and meriting approval.  As set forth below, this Settlement meets all the requirements and the standard for approval of a class action settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

Accordingly, Plaintiffs request that this Court grant this motion for final approval of the Settlement Agreement and the claims administration costs. Plaintiffs further request this Court enter judgment pursuant to the terms of the Settlement Agreement and retain jurisdiction to enforce the terms of the Settlement as the parties have agreed.[3]

---

[2] Capitalized defined terms used in this memorandum have the same definition as those established in the Settlement Agreement.

[3] Plaintiffs separately move for approval of Class Representative Enhancement Awards and an award of attorneys' fees and costs to Initiative Legal Group APC ("Class Counsel").  ADT has agreed not to oppose Plaintiffs' motion.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

## II.    FACTS AND PROCEDURE

### A.    Plaintiff Liliya Kisliuk Brought A Class Action Complaint Alleging Wage And Hour Violations

ADT is a well-known, national provider of security and armed guard services to consumers and businesses.  From April 2005 until June 2007, Plaintiff Liliya Kisliuk was employed by ADT in California as an armed Security Patrol Officer.  (Declaration of Matthew T. Theriault ["Theriault Decl."] ¶ 2.) Plaintiff was responsible primarily for monitoring and, when necessary, protecting the homes and businesses of ADT's Los Angeles customers. Following her termination, Plaintiff sought legal counsel from Class Counsel, who agreed to represent her in this putative class action against ADT.

Initiative conducted extensive pre-litigation analysis of Plaintiff's claims, Defendant's potential liability, and Defendant's overall financial viability. (Theriault Decl. ¶¶ 2-26.)  Initiative conducted several interviews with Plaintiff and reviewed her work documents to determine the nature and extent of her claims.  (*Id.* at ¶¶ 2-8.)  Based on that review, Initiative determined, and Plaintiff agreed, that the claims could be brought on a class-wide basis.  (*Id.*)  Initiative also investigated Defendant's viability, which did not appear to be an issue as Defendant is a national provider of security services.  (*Id.* at ¶¶ 9-11.)  Initiative further ensured that the class members would receive a greater monetary benefit by limiting the class to only those employees who were employed by Defendant within California.  (*Id.* at ¶ 14.)

The Complaint, filed on May 15, 2008, alleged seven causes of action, including that ADT failed to pay premium compensation required by California Labor Code section 226.7(b) to Plaintiff and the Class Members after they were denied duty-free meal and rest periods pursuant to Sections 226.7(a) and 512.[4]

---

[4] Unless otherwise noted, statutory references hereinafter are to the California Labor Code.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

(Theriault Decl. ¶ 14.)  The Complaint also alleged that Plaintiff and Class Members were issued wage statements that failed to contain all information required by section 226(a), chiefly because they did not include the overtime rate (when overtime was worked) or the sum total of hours actually worked.  The Complaint also alleged ADT had no business-expense reimbursement policy in accordance with sections 2800 and 2802; ADT required its employees to maintain, but did not reimburse for, the costs of obtaining and maintaining certain licenses and permits which the state of California requires such individuals to have if they intend to work as security guards within the state.

Additionally, the Complaint alleged several claims predicated on the above-described underlying violations.  (Theriault Decl. ¶ 14.)  Plaintiff alleged that all wages were not paid in the following pay period as required by section 204 or, for those employees who were separated, on their final day of employment as required by sections 201 and 202.  And Plaintiff alleged that the above-described violations of the Labor Code violated the California Business and Professions Code sections 17200, et seq. ("UCL").  On behalf of the proposed class, Plaintiff sought injunctive and equitable relief, actual, consequential and incidental damages, statutory damages, statutory penalties, restitution, interest, and attorneys' fees and costs.

Initiative sought to expand the relief available to the class members by exhausting the statutory prerequisites under section 2699.3 of the Labor Code Private Attorney General Act ("PAGA").  (Theriault Decl. ¶ 15.)  On February 3, 2009, Plaintiff filed a First Amended Complaint that included additional penalties under sections 2699(f) and (g) of PAGA.

By pleading violations of California's Unfair Competition Law, the Complaint sought the above-described relief on behalf of all formerly-employed and current non-exempt employees of ADT who were employed at any time during the four years preceding the original Complaint's filing.  *See Cortez v.*

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177-179 (2000) (wrongfully withheld wages may be recovered as restitution pursuant to the California Business and Professions Code section 17200, *et seq*. (the "UCL"), which has a four-year statute of limitations).

On June 17, 2008, the Court issued an Order to show cause why the matter should not be dismissed for lack of subject matter jurisdiction.  (Theriault Decl. at ¶ 17.)  In response, Initiative conducted discovery to meet the Ninth Circuit's "total activities" test pursuant to *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1094 (9th Cir. 1990).  Following the submission of Defendant's responses, the Court discharged the Order on August 25, 2008.  (*Id.* at ¶¶ 17-19.)

## B.    Class Counsel Successfully Opposed Defendant's Motion To Dismiss

Defendant filed a motion to dismiss on June 11, 2008.  The motion was significant in several respects.  First, Defendant attempted to use this Court's ruling in *Brown v. Fed. Ex. Corp.*, 249 F.R.D. (C.D. Cal. 2008) to obtain a pre-emptive ruling that Plaintiff's meal and rest period claims could not be maintained as a class action.  (Theriault Decl. ¶¶ 20-22.)  Additionally, Defendant also challenged Plaintiff's ability to recover penalties pursuant to section 226(e) for violations of California's wage statement statute, section 226(a) (proscribing the contents of pay stubs), without showing pecuniary or actual harm.  (*Id.* at ¶ 23.)  Finally, Defendant argued that Plaintiff could not maintain class allegations for business reimbursement expenses, at least as that class was defined by Plaintiff.  (*Id.* at ¶ 24.)  On July 1, 2008, the Court denied Defendant's motion on each issue.  (*Id.* at ¶ 25.)

## C.    Class Counsel Conduct Extensive Discovery

Following Plaintiff's successful defense against Defendant's Motion to Dismiss, Plaintiff propounded discovery to elicit information to support Plaintiff's anticipated motion for class certification.  (Theriault Decl. ¶¶ 27-43.)

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

Plaintiff propounded interrogatories and requests for production, which resulted in the production of thousands of pages of time and wage records of a statistically significant sample of the class. This production allowed Plaintiff's expert to estimate the overall rate of meal period violations. Additionally, Plaintiff deposed ADT's designated "most knowledgeable" representative and interviewed numerous class members.

### D. The Parties Settle The Claims With The Mediator's Assistance

The Parties agreed to a mediation led by Michael Dickstein, a well-known and respected wage-and-hour class action mediator. (Theriault Decl. ¶¶ 44-49.) After Class Counsel, in consultation with its expert, analyzed all the documents necessary to make reasonable assumptions about potential relief, the Parties mediated on March 21, 2009. The parties were unable to reach a settlement at that time.

Although the Parties continued to engage in settlement discussions, Plaintiff filed a Motion for Class Certification pursuant to Rule 23 on June 29, 2009, specifically seeking certification of the wage statement and business reimbursement claims. (Theriault Decl. ¶¶ 50-51.) After the matter was fully briefed, the Parties agreed to resume mediation talks, and the Court, pursuant to the Parties' stipulations, extended and then vacated the class certification hearing date.

Mr. Dickstein assisted the Parties in negotiating a bifurcated settlement. (Theriault Decl. ¶¶ 54-56.) Following discussions lasting over five months, Mr. Dickstein proposed class relief of injunctive relief in the form of certain policy changes and a non-reversionary cash payment of $885,000. Following the Parties' acceptance, Mr. Dickstein issued a second proposal for Class Counsel's fee and costs of $590,000, which was accepted. (*Id*.) Accordingly, the negotiations regarding the fee award were separate and apart from negotiations concerning compensatory and injunctive relief.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    Thus, given the risks associated with continued litigation versus the

2    certainty of a settlement that would make cash payments to the 3,083 Class

3    Members, Plaintiff and her lawyers concluded that the settlement was fair,

4    reasonable and adequate.

5    **E.    The Addition Of Jesse Crick And Re-Execution Of The**

6    **Settlement Agreement**

7    On March 15, 2010, Plaintiff Kisliuk moved for conditional class

8    certification and preliminary approval of the settlement, but withdrew her motion

9    at the conclusion of the hearing on April 12, 2010.  (Theriault Decl. ¶¶ 57-58.)

10    During this hearing, the Court raised several issues concerning the settlement

11    agreement, class notice and claim form, among which was the monetarily

12    unequal distribution of the settlement proceeds.  (*Id.* at ¶ 58.)  However, several

13    non-patrol officer/sentry employees had expressed a willingness to pursue claims

14    against Defendant, among them, Jesse Crick.  (*Id.* at ¶¶ 58-59.)

15    Named-plaintiff Crick was informed of the terms of the settlement

16    agreement, and he agreed that the terms were fair, even though the non-patrol-

17    officer/sentry class (Subclass B) would receive less money per workweek than

18    the patrol officer/sentry class (Subclass A).  (Theriault Decl. at ¶ 58.)

19    The Parties filed a stipulation granting Plaintiff leave to amend the

20    complaint to add Named-Plaintiff Jesse Crick to represent Subclass B.  The

21    Parties also redrafted and executed a new settlement agreement, class notice, and

22    claim form in an effort to account for the addition of Named-Plaintiff Crick and

23    to address several issues raised by the Court.

24    **F.    The Proposed Settlement Fully Resolves The Claims**

25    **1.    Composition of the Class**

26    The Class consists of 3,083 current and former non-exempt employees of

27    ADT in California ("Class Members") between May 15, 2004 and August 30,

28    2010 ("Class Period").  Settlement Agreement, Definition ¶ 8 (p. 5), Terms of

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1 | Agreement ("TOA") ¶ 8.2 (p. 24).

2 | ## 2.    Settlement Consideration

3 | The Settlement Agreement releases only those claims alleged in the
4 | complaint.  In exchange, ADT will pay $885,000 into a non-reversionary
5 | settlement fund.  *Id.*, Definition ¶ 6 (p. 4); TOA ¶ 2.3 (p. 13).  The parties have
6 | agreed to the following payments from this fund: (1) up to $10,000 to both
7 | Plaintiffs as Class Representative Enhancement Awards; (2) $10,000 to the State
8 | of California for the release of PAGA claims, 75% ($7,500) of which will be
9 | payable to the LWDA, and 25% ($2,500) of which will be payable to Class
10 | Members; and (3) $50,000 for claims administration costs.  The remaining
11 | portion will be distributed to Class Members who submit valid and timely claim
12 | forms within 45 days after the notice is mailed.

13 | Class Members who have submitted claim forms ("Participating Class
14 | Members") will be eligible for a monetary payment.  (*Id.*, Definitions ¶ 24 (p. 7)
15 | and ¶ 28 (p. 8); TOA ¶ 2.2.4 (p.12) and ¶ 3.1.4 (p. 14)).  The amount each
16 | Participating Class Member receives will be chiefly based on the number of
17 | weeks that they worked during the class period, subject to certain adjustments.
18 | Formerly employed Participating Class Members will receive a slight increase
19 | due to additional "waiting-time" penalties, which section 203 provides when
20 | employers withhold wages at separation.  Additionally, Participating Class
21 | Members who are identified as either patrol officer or sentries ("Subclass A")
22 | will receive a 50% increase as an acknowledgement of evidence that they took
23 | on-duty meal and rest periods and maintained several licenses required by
24 | Defendant and the state to perform work as security guards.  However,
25 | regardless of the number of Participating Class Members, no amount of the
26 | $885,000 will revert to Defendant, with each Participating Class Member's share
27 | being proportionally increased to ensure that the entire Net Settlement Amount is
28 | paid.  (*Id.*, Definition ¶ 11 (p.5), TOA ¶ 2.2 (p. 11)).

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

Defendant will also provide non-monetary, injunctive relief, which inures to the benefit of currently employed Class Members as well as future ADT employees. (*Id.*, Definition ¶ 22 (p. 6), TOA ¶ 2 (p. 10)). Specifically, ADT has agreed to: (1) change its wage statements to show total hours worked and the overtime rate; (2) relieve sentries for their meal periods; and (3) reimburse Class Members for the cost of purchasing ammunition.

Additionally, through separate negotiations, ADT has agreed to make a separate payment for Initiative's fees and costs of up to $590,000. (*Id.*, Definition ¶ 6 (p. 4), TOA ¶ 2.3 (p. 13)). Any portion of this amount not awarded by the Court will revert to Defendant.

### 3. The Release Is Limited to Claims in Complaint

The consideration provided by Class Members is a release of the claims alleged in this matter, and only those claims – no more. Class Members thus release:

> [C]laims under the California Business & Professions Code §§ 17200 et seq. and Labor Code Private Attorneys General Act of 2004 (Cal. Lab. Code §§ 2698, et seq.) arising from and only from the following allegations: Defendant failed to (i) pay wages owed upon termination of employment pursuant to California Labor Code §§ 201 and 202; (ii) pay all wages due within any time period permissible under California Labor Code §§ 204; (iii) provide meal periods in accordance with California Labor Code §§ 226.7 and 512, and pay the full meal period premium due under California Labor Code § 226.7; (iv) authorize and permit rest periods in accordance with California Labor Code §§ 226.7, and pay the full rest period premium due under California Labor Code § 226.7; (v) furnish compliant wage statements in accordance with California Labor Code § 226; and (vi) reimburse all necessary business expenses in violation of California Labor Code §§ 2800 and 2802.

*Id.*, Definition ¶ 33 (p. 8), TOA ¶ 5 (p. 20).

### G. The Notice And Claims Administration Processes Were Completed Pursuant To The Preliminary Approval Order

As authorized by the Court's Order preliminarily approving the Settlement

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

Agreement, the Parties engaged Simpluris, Inc. ("Simpluris") to provide claims administration services. Simpluris' duties included: printing and mailing the Class Notice; receiving undeliverable Class Notices; receiving and validating Claim Forms and Exclusion Forms; and calculating claim payments. (Declaration of Michael Bui ["Bui Decl.] ¶ 4.) If the Court grants final approval of the Settlement, Simpluris will be responsible for mailing settlement checks and tax-reporting materials to participating Class Members. (*Id.*)

On September 1, 2010, Simpluris received the Class Notice prepared by Class Counsel and Defendant's counsel. (Bui Decl. ¶ 6.) The Class Notice advised Class Members that they could participate in the Settlement by submitting a timely and valid Claim Form. The Class Notice also advised Class Members of their option to opt out of the Settlement by timely submitting an Exclusion Form. (*Id.*) On September 7, 2010, Defendant's counsel provided Simpluris with a mailing list containing Class Member names, last known addresses and other relevant information necessary for settlement administration. (*Id.* at ¶ 7.) The Class List contained 3,083 Class Members. (*Id.*)

The mailing addresses contained in the Class List were processed and updated using the National Change of Address Database maintained by the U.S. Postal Service. (Bui Decl. ¶ 7.) On September 17, 2010, Class Notices were mailed to 3,083 Class Members via First-Class U.S. Mail. (*Id.*)

Simpluris has been responsible for receipt of all Claim Forms. (Bui Decl. ¶ 9.) Simpluris has received 1,212 Claim Forms, comprising approximately 39.3% of the Settlement Class. (*Id.*) These participating Class Members have claimed approximately 48.3% of the net settlement amount. The average recovery under the Settlement is $666.25 and the highest is $1,591.50. (*Id.*) Notably, none of the Class Members objected to the Settlement and less than one percent have opted out. (*Id.* at ¶¶ 9, 12.)

III.    **ARGUMENT**

    A.    **The Class Action Settlement Is Presumptively Fair**

        1.    **All Relevant Factors Support the Presumption That the
Settlement Is Fair**

Under Federal Rule of Civil Procedure 23(e), the central issue on a motion for final approval of a class action settlement is whether the settlement is "fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 668 F.2d 615, 625 (9th Cir. 1982). A settlement is fair, adequate and reasonable when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation (Fourth)* § 21.61 (2004)).

Federal and California state law favor settlement, especially in class actions and other complex cases where party and judicial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Bush v. Superior Court*, 10 Cal. App. 4th 1374, 1382 (1992).

In particular, the Ninth Circuit has a "strong judicial policy that favors settlements" in complex actions. *In re Pacific Enterprise Security Litigation*, 47 F.3d 373, 378 (9th Cir. 1995); *In re Nvidia Corp. Derivative Litigation*, 2009 U.S. Dist. Lexis 24973 (N.D. Cal.). A settlement should be approved by the Court if it is fundamentally "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e); *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). A settlement is fair where, as here, sufficient investigation and discovery have taken place to allow counsel and the Court to act intelligently, the settlement is the product of arm's-length negotiations, and counsel is experienced in similar types of litigation. *Id.* at 1375; Conte and Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2002).

### 2.  Significant Investigation and Discovery Were Conducted

Following Plaintiff's successful defense against Defendant's Motion to Dismiss, Plaintiff propounded discovery to elicit information to support Plaintiff's anticipated motion for class certification.  (Theriault Decl., ¶¶ 27-43.) Plaintiff propounded interrogatories and requests for production, which resulted in the production of thousands of pages of time and wage records of a statistically significant portion of the class.  This production allowed Plaintiff's expert to estimate the overall rate of meal period violations.  Additionally, Plaintiff deposed ADT's designated "most qualified" representative.

Class Counsel also made use of documents and data provided informally in connection with mediation to permit an assessment of ADT's exposure as to each cause of action.  Specifically, Initiative (1) conducted a thorough review of documents containing ADT's policies with respect to each cause of action; (2) conducted an expert review of a sample of time records for Class Members in order to estimate the meal period violation rate; (3) researched the applicable law as to each pleaded claim, jurisdictional issues, potential defenses and certification issues; (4) propounded and responded to written discovery; and (5) conducted a deposition of ADT's designee.  (Theriault Decl., ¶¶ 33-43). Using this information, Initiative assessed the low, reasonable, and high value of the claims.  *Id.*

### 3.  The Settlement Was Reached Through Arm's-Length Negotiations in Which Both Parties Were Represented by Experienced Counsel

The law firms that negotiated the Settlement have considerable experience litigating wage and hour class actions.  (*See* Declaration of Marc Primo ["Primo Decl."] ¶¶ 3-5.)  The Parties participated in a full day of mediation and, although this Action did not settle at mediation, the Parties thereafter continued to engage in months of settlement discussions moderated by Mr. Dickstein.  (Theriault

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  Decl., ¶¶ 44-49; 54-56).  Even after the material terms of the settlement were
2  parsed and accepted, the Parties required an additional five months to finalize all
3  remaining terms.
4      Based on Initiative's independent evaluation, the Settlement is fair,
5  reasonable, and adequate.  The Settlement is in the best interest of the Settlement
6  Class for several reasons.  First, there is a realistic possibility that continued
7  litigation could have resulted in defeat either at class certification or on the
8  merits, thereby foreclosing the prospect of class-wide recovery.  Second, the
9  passage of time invariably diminishes the intrinsic value of any settlement.  And,
10 third, even if Plaintiffs were to succeed both at certification and on the merits,
11 appeals by ADT could have protracted this litigation well into the next decade.

### 4.     The Proposed Settlement Is Reasonable Given the Strengths of Plaintiffs' Claims and the Risk and Expense of Continued Litigation

15     In determining whether to approve a class action settlement, the Court
16 should consider the settlement in light of the "risk, expense, complexity, and
17 likely duration of further litigation."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,
18 1026 (9th Cir. 1988).  Class Counsel evaluated the strengths of the class claims
19 for meal breaks, rest breaks, unpaid wages, unpaid business expenses, and wage
20 statements and assessed the range of potential outcomes of the litigation, in light
21 of the risk, expense, complexity and likely duration of the litigation.
22     Plaintiffs alleged that Defendant did not provide meal and rest breaks as
23 required in California.  Under California law, "[a]n employer may not employ an
24 employee for a work period of more than five hours per day without providing
25 the employee with a meal period of not less than 30 minutes."  Cal. Lab. Code §
26 512(a).  Additionally, an employee may not work more than 10 hours without
27 being provided a second meal period.  *Id.*  Where an employee does not receive a
28 timely meal period of at least 30 minutes or a timely rest break of at least 10

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    minutes, the employer is required to pay the employee one additional hour of pay

2    at the employee's regular rate of compensation.  Cal. Lab. Code § 226.7(b).

3    Although "the meal period may be waived by mutual consent of both the

4    employer and employee," a waiver is permissible only for the first meal period if

5    the total work period per day is no more than 6 hours.  Cal. Lab. Code § 512(a).

6    A second meal period may be waived if an employee's total hours worked is no

7    more than 12 hours and if the first meal period is *not* waived.  *Id*.  If putative

8    Class members did waive their meal periods and continued to work during "on

9    duty" meal periods, such a waiver of a meal period must be in writing.  Cal.

10   Code Regs., tit. 8, § 11040, subd. 11(A).

11       However, California's meal and rest break laws were, and continue to be,

12   uncertain and unstable.  This uncertainty and instability affected the assessment

13   of the meal and rest break claims—as to both certification and on the merits—

14   and the ultimate valuations of those claims.  *See Brinker Restaurant Corp. v.*

15   *Superior Court*, 165 Cal. App. 4th 25, 31 (2008) (holding that employers "need

16   only provide [meal breaks] and not ensure they are taken") *review granted* 85

17   Cal. Rptr. 3d 688 (2008).  Notwithstanding *any* decision by the California

18   Supreme Court concerning an employer's duty of care concerning meal and rest

19   breaks, the claims were substantially compromised.  For instance, employees

20   other than patrol officers and sentries were scheduled for meal and rest breaks.

21   And patrol officers and sentries were rarely denied meal or rest breaks, a fact

22   verified by the Parties' respective experts who analyzed their patrol officers' and

23   sentries' records.  (Theriault Decl., ¶¶ 39-43).

24       Plaintiffs also alleged that ADT failed to reimburse its employees for all

25   business-related expenses.  Although that policy was common to all Class

26   Members, the patrol officers and sentries had licensing expenses whereas other

27   Class Members did not.  Although there is no binding precedent as to whether an

28   employer must bear the licensure costs of its employees, the DLSE has opined

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   that licensing requirements must be borne by the employee. (Theriault Decl.,

2   ¶ 42).

3         Further, although claims for violation of section 226 are typically

4   amenable to litigation on a class-wide basis, they are vulnerable to an

5   unfavorable disposition at summary judgment. Defendants commonly argue, as

6   here, that section 226(e) provides a right of recovery only for employees

7   "suffering injury" as a result of an employer's failure to comply with section

8   226(a). Specifically, section 226(e) provides:

9              "An employee suffering injury as a result of a knowing
             and intentional failure by an employer to comply with

10         subdivision (a) is entitled to recover the greater of all
             actual damages or fifty ($50) for the initial pay period

11         in which a violation occurs and one hundred dollars per
             employee ($100) for each violation in a subsequent pay

12         period, not exceeding an aggregate penalty of four
             thousand dollars ($4,000) and is entitled to an award of

13         costs and reasonable attorney's fees." (emphasis
             added.)

14

15         The critical question, therefore, is whether "suffering injury" merely

16   means that a violation of section 226(a) has occurred or if it requires actual

17   damages. Defendants often argue that the plain meaning of "suffering injury,"

18   which they claim is established by the rules of statutory construction and

19   legislative history, requires an employee to suffer actual damages. These

20   arguments are commonly followed by citations to various federal cases that,

21   while not binding, have persuaded certain California district judges to dismiss

22   wage statement claims. *See Jasper v. C.R. England, Inc.*, No. CV 08-5266-

23   GW(CWx), 2009 U.S. Dist. LEXIS 34802 at * 15 (C.D. Cal. month day, 2009);

24   *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 374 (C.D. Cal. 2009); *Elliot v.*

25   *Spherion Pacific WorkForce, LLC*, 572 F. Supp.2d 1169 (C.D. Cal. 2008).

26   Consequently, as with the other claims, Plaintiff recognized a need to discount

27   the value of the wage statement claim.

28         Finally, had there been no settlement, and had the Court issued a

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  certification ruling, the negotiations would have been substantially altered.

2  Certification would almost certainly have increased the settlement value and,

3  conversely, a denial of certification would have driven the settlement value to

4  near zero.  Even if the certification motion had been granted, the risk and

5  expense of trial and the time delay associated with any subsequent appeal

6  establish that the Settlement is a fair and reasonable compromise.

7              **5.    The Response of the Class Was Positive**

8              Measured by their responses, this Settlement is highly favored by the

9  Class.  There are 3,083 Class Members and less than one percent have opted out

10  of the settlement.  (Bui Decl. ¶ 9.)  Furthermore, Simpluris has received 1,212

11  Claim Forms, representing approximately 39.3% of the Settlement Class.  (*Id.*)

12  This participation rate is well within the range of expectations for comparable

13  class actions.  (*See* Bui Decl. ¶ 10, *citing Alberto v. GMRI, Inc. (Olive Garden)*

14  *(meal and rest break case)*, United States District Court, Eastern District of

15  California, Case No. 07-cv-01895 (27.77%); *Keplinger v. California Pizza*

16  *Kitchen (meal and rest break case)*, Fresno Superior Court, Case No.

17  07CECG01534 (12.18%); c) *Muniz v Pilot Travel Centers, LLC (meal and rest*

18  *break case)*, United States District Court, Eastern District of California, Case No.

19  07-cv-00325 (13.97%); d) *Smith v. The Children's Place (meal and rest break*

20  *case)*, Los Angeles Superior Court, Case No. 328780 (36.75%); e) *Wu v. SR*

21  *Investments (meal and rest break case)*, Los Angeles Superior Court, Case No.

22  BC356245 (30%); and f) *Flores v. CVS Pharmacy, Inc. (meal and rest break*

23  *case),* United States District Court, Central District of California, Case No.

24  CV07-05326 FMC (EX) (34.87%).  Numerous measures were taken to ensure

25  strong Class participation in the Settlement: (1) Simpluris updated Class Member

26  addresses by searching the National Change of Address Database (*id.* at ¶ 7), (2)

27  performed skip traces on undeliverable Class Notices (*id.* at ¶ 8), and (3) mailed

28  reminder postcards to Class Members who had not responded to the Notice.  (*Id.*

1 | at ¶ 7.)

2 |      Significantly, there were no objections to the Settlement. (Bui Decl. ¶ 12.)

3 | A low number of objections is a strong indicator that a settlement is fair and

4 | reasonable. *See*, *e.g.*, *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal.

5 | 1979) (finding that objections from only 16 percent of the class was persuasive

6 | that the settlement was adequate).[5]

7 |     **B.**    **The Proposed Payment To The Claims Administrator Is**

8 |             **Reasonable**

9 |      The Parties request final approval for claims administration costs of

10 | $50,000. The Claims Administrator promptly and properly distributed the Class

11 | Notice to Class Members and has completed its duties in accordance with the

12 | settlement terms and the Court's preliminary approval Order. Simpluris has

13 | disseminated the Class Notice and processed Claim Forms and Exclusion Forms.

14 | If the Court grants final approval of the Settlement, Simpluris will be responsible

15 | for mailing settlement checks and tax-reporting materials to participating Class

16 | Members. (Bui Decl. ¶ 4.) This payment is fair and reasonable. It has received

17 | no objections, and should be accorded final approval along with the rest of the

18 |

19 |     [5] Indeed, a settlement would not be unfair simply because a large number

20 | or a certain percentage of class members oppose it, as long as it is otherwise fair, adequate, and reasonable. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.

21 | 1977); *Flinn v. FMC Corp.*, 528 F.2d at 1169, 1173-74 (4th Cir. 1975); *Muldrow v. H. K. Porter Co.*, 20 Fed. R. Serv. 1069, 1074-75 (N.D. Ala. 1975);

22 | *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803 (3d Cir. 1974); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214-17 (5th Cir.

23 | 1978). Nor should a settlement be rejected merely because class plaintiffs oppose it. *Flinn v. FMC Corp.*, 528 F.2d at 1174; *Saylor v. Lindsley*, 456 F.2d

24 | 896, 899-900 (2d Cir. 1972). Thus, there are several cases in which even the presence of a large number of objectors has not prevented a court from

25 | approving a settlement. *See*, *e.g.*, *Bryan v. Pittsburgh Plate Glass Co.*, *supra* (settlement approved despite opposition of more than twenty percent of the

26 | class); *Muldrow v. H. K. Porter Co.*, *supra* (settlement approved over objection of twenty percent of the class); *Cotton v. Hinton*, *supra* (fact that objectors

27 | purported to represent fifty percent of class did not prevent settlement). To hold otherwise would put too much power in the hands of a few persons having no

28 | right to a preferred position in settlement, to thwart a result that might be in the best interests of the class. *Saylor v. Lindsley*, *supra*.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  Settlement terms.

2  **C.    The Proposed PAGA Payment Is Reasonable**

3       Pursuant to the Settlement Agreement, the Parties have agreed to allocate
4  $10,000 from the Class Settlement Amount as civil penalties pursuant to the
5  California Labor Code Private Attorneys General Act ("PAGA").  Seventy-five
6  percent ($7,500) of the PAGA civil penalties shall be paid to the California
7  Labor and Workforce Development Agency, and the remainder ($2,500) shall be
8  paid to the Class.  There is no precise metric that has been developed by courts to
9  determine what portion of a settlement for claims involving PAGA penalties
10  should be allocated as PAGA penalties.  However, where settlements are
11  negotiated a good faith amount as to PAGA penalties and "there is no indication
12  that this amount was the result of self-interest at the expense of other Class
13  Members," such amounts are generally considered reasonable.  *Hopson v.*
14  *Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *24
15  (N.D. Cal. Apr. 3, 2009).

16       Here, the amount allocated, slightly over one percent of the Class
17  Settlement Amount, is well within the range of reasonable PAGA settlement
18  amounts approved by the courts.  *See*, *e.g.*, *Hopson v. Hanesbrands Inc.*, *supra*
19  (approving a PAGA settlement of 0.3% or $1,500); *In Re M.L. Stern Overtime*
20  *Litig.*, No. 07-CV-0118-BTM, 2009 U.S. Dist. LEXIS 31650, at *4 (S.D. Cal.
21  Apr. 13, 2009) (preliminarily approving a PAGA settlement of approximately
22  2%, or $20,000).  Accordingly, the PAGA allocation is reasonable and should be
23  approved along with the Settlement.

24  **IV.   CONCLUSION**

25       The Parties have negotiated a fair Settlement of the wage and hour claims,
26  and the Class Members' positive response rate is an indicator that the Settlement
27  is fair and reasonable.  Notably, there were no objectors to the Settlement.
28  Accordingly, Plaintiffs respectfully request that this Court grant final approval of

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    the Settlement Agreement.

2

3    Dated:  November 15, 2010                Respectfully submitted,

4                                             Initiative Legal Group APC

5

6                                        By: /s/ Matthew T. Theriault
                                             Gene Williams
7                                            Matthew T. Theriault

8                                            Attorneys for Plaintiffs Liliya Kisliuk
                                             and Jesse Crick
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT